**IN THE UNITED STATES DISTRICT COURT**
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

DWIGHT ALEXANDER                    *
                                    *
            Plaintiff               *
                                    *
V.                                  *
                                    *    NO: 4:10CV01535 SWW
BAYVIEW LOAN SERVICING, LLC         *
                                    *
            Defendant               *

**ORDER**

Plaintiff Dwight Alexander ("Alexander") brings this diversity action for breach of contract and fraud against Bayview Loan Servicing, LLC ("Bayview").  Before the Court is Bayview's motion for summary judgment (docket entries #88, #89, #90) and Alexander's response in opposition (docket entries #91, #92).  Also before the Court is Bayview's motion seeking leave to file a counterclaim and third-party complaint (docket entry #87).  After careful consideration, and for reasons that follow, summary judgment will be entered in Bayview's favor, and the motion for leave to file a counterclaim and third-party complaint will be denied.

**I.**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party has properly supported its motion for summary judgment, the non-

moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).

The non-moving party may not rest on mere allegations or denials of his pleading but must "come forward with 'specific facts showing a genuine issue for trial.'" *Id*. at 587 (quoting Fed. R. Civ. P. 56(e)). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995).

## II.

The following facts are undisputed.[1] On June 16, 2003, Alexander executed a real estate installment note ("Note") and mortgage ("Mortgage") in favor of the Martin Family Trust in the principal amount of $346,232.19. *See* docket entry #90, Ex. C. The Note and Mortgage called for monthly payments in the amount of $3,016.05, payable on or before the 15th day of each month, beginning July 15, 2003.

Originally, the Mortgage encumbered twenty separate properties, and the Note terms required Alexander to pay property taxes assessed on each property and to insure the houses and buildings thereon. The Note further provided that if Alexander failed to pay taxes or insurance premiums, the holder had the right to pay those items and have a lien for the amount paid, with interest at the highest rate allowed by law.

---

[1] Local Rule 56.1 provides that a party moving for summary judgment must submit a statement of the material facts as to which it contends there is no genuine issue to be tried, and the non-moving party must file a responsive statement of the material facts as to which it contends a genuine issue exists to be tried. "All material facts set forth in the statement filed by the moving party . . . shall be deemed admitted unless controverted by the statement filed by the non-moving party . . . ." Local Rule 56.1(c).

On July 14, 2003, the Martin Family Trust assigned the Note and Mortgage to MFT, L.L.C.  *See* docket entry #90, Ex. D.  On November 30, 2004, MFT, L.L.C. released one of the properties covered under the Mortgage, located at 2314 South Brown Street.  *See* docket entry #90, Ex. D.  On December 28, 2005, MFT, L.L.C. assigned the Mortgage and Note to Bayview.  *See* docket entry #90, Exs. A, B.  At the time of the assignment to Bayview, the principal amount due under the loan was $313,777.66.  *See* docket entry #90, Ex. E at 51.

Soon after Bayview took over the Note, Alexander fell behind on payments, and Bayview assigned late charges.  *See* docket entry #90, Ex. E.  In July 2007, Bayview waived late charges in the amount of $2,111.27, and Alexander brought the Note current through June 2007.  *See* docket entry #90, Ex. E at 50.

Alexander again fell behind on payments in late 2007.  On November 16, 2007, Bayview released a property encumbered by the mortgage, located at 811 Maxwell Street.  *See* docket entry #66, Ex. G.  Beginning in November 2007, Bayview paid property taxes and insurance premiums for the properties originally covered under the Mortgage.  *See* docket entry #90, at 49.  Bayview erroneously made insurance and property tax disbursements for each of the twenty properties originally covered under the Mortgage–including the released South Brown Street and Maxwell Street properties.

In July 2008, Alexander's loan payments were in arrears dating back to November 2007, and Bayview initiated foreclosure proceedings.  However, in August 2008, Bayview cancelled the foreclosure, and the parties entered a loan adjustment agreement ("LOA") that added overdue payments, interest, late fees, escrow advances and other fees to the principal balance of the Note.  *See* docket entry #90, Ex. H.  The LOA required Alexander to make monthly payments of $1,753.91, plus monthly escrow payments of $767.06, which decreased his monthly payments by

approximately $500.

Bayview processed the LOA in December 2008, and it waived $2,122.41 in late charges when it re-amortized Alexander's debt. However, prior to entering the LOA, Alexander made no payments toward escrow, and the LOA provided for the establishment of an escrow account for the collection of property taxes and insurance premiums. The terms of the LOA provided that Bayview would analyze the escrow account from time to time and adjust Alexander's escrow payments if necessary. In the process of reviewing the loan adjustment agreement, Bayview discovered and corrected charges to the escrow account related to insurance and taxes erroneously paid on the Maxwell Street property. Bayview failed, however, to discover its erroneous disbursements and escrow charges for insurance on the South Brown Street property.

Alexander made ten regular payments under the LOA, plus three partial payments. However, Alexander failed to make a payment in February 2010, and Bayview initiated the foreclosure process. Subsequently, Alexander filed numerous state and federal actions in an attempt to stop foreclosure.

In this case, Alexander charges that Bayview breached contractual duties because it required him to pay insurance and taxes on released properties, which "created a repugnant situation that makes it impossible for [him] to comply with the terms of the mortgage agreement." Docket entry #64, Amend. Compl., ¶ 14. Alexander also charges that Bayview committed fraud, which rendered the Note, Mortgage, and LOA void and unenforceable. By way of relief, Alexander seeks $285,500 for breach of contract and $300,000 in punitive damages. Alexander also seeks rescission.

**III.**

**Breach of Contract**

The elements for breach of contract under Arkansas law include: (1) the existence of a valid and enforceable contract; (2) an obligation on the part of the defendant; (3) a breach of that obligation; and (4) damages resulting from the breach.  *See Rabalaias v. Barnett*, 284 Ark. 527, 683 S.W.2d 919 (Ark.1985)).  Bayview asserts that it is entitled to summary judgment because Alexander is unable to prove damages.  Bayview acknowledges that it erroneously disbursed $11,026.56 for insurance premiums on the South Brown Street property and charged the same to Alexander's escrow account.  Bayview notes, however, that even accounting for the $11,026.56 in charges, there remains an outstanding escrow balance of $92,844.93.  Bayview further notes that Alexander "has enjoyed the benefit of avoiding foreclosure . . . for over two years without any type of payment to Bayview."

Alexander argues that by requiring him to make escrow payments for a property that had been released from the Mortgage, Bayview created a situation that made it impossible for him to continue to make payments under the Note.  In other words, Alexander claims that Bayview's errorneous escrow charges caused his default.

Generally, damages for breach of contract are those which would place the injured party in the same position as if the contract had not been breached, and damages must arise from the wrongful acts of the breaching party.  *See Dawson v. Temps Plus, Inc*., 337 Ark. 247, 258, 987 S.W.2d 722, 278 (1999).  Here, Alexander's total delinquency under the LOA is far greater than Bayview's charges for insurance premiums on the South Brown Street property.   Given the undisputed evidence of Alexander's payment history and the lack of any plausible evidence that Bayview's error caused Alexander to fall behind on payments, no reasonable fact finder could conclude that Bayview's erroneous charges caused Alexander's default.

Furthermore, the Court finds that Alexander has failed to allege facts or present evidence that Bayview breached a contractual duty. The LOA provides that Bayview will establish an escrow account for the collection of property taxes and insurance premiums, and neither the Note nor the LOA contains express terms regarding Bayview's accounting duties related to insurance premium disbursements and escrow charges. Bayview acknowledges that it mistakenly paid insurance premiums on the South Brown Street property and made related charges to the escrow account totaling $11,026.56. However, it is undisputed that when Bayview discovered similar accounting errors associated with the Maxwell Street property, it credited the escrow account to reverse those errors, and Alexander does not assert that Bayview has refused to do the same with respect to the South Brown Street property. Although every contract imposes upon each party a duty of good faith and fair dealing in its performance, the record is void of evidence that Bayview breached that duty.

Given the lack of specific contract terms prohibiting Bayview's conduct or evidence that Bayview failed in its duty to perform the contract in good faith, the Court finds no genuine issues for trial with respect to Alexander's breach of contract claim.

**Fraud**

In Arkansas, fraud consists of five elements: "(1) a false representation of a material fact; (2) knowledge that the representation is false or that there is insufficient evidence upon which to make the representation; (3) intent to induce action or inaction in reliance upon the representation; (4) justifiable reliance upon the representation; and (5) damage suffered as a result of the reliance." *Tyson Foods, Inc. v. Davis*, 347 Ark. 566, 580, 66 S.W.3d 568, 577 (2002).

Alexander claims that Bayview engaged in "several degrees and definitions of fraud,"

including fraud in the execution, fraud in the inducement, and "positive fraud." Amend. Compl., ¶ 16. According to Alexander, he was not notified of the mortgage assignment to Bayview and he was forced to be a party to a contract he knew nothing about. Alexander further claims that Bayview "reset" his principal debt to $346,232.19, and "he didn't know that [the South Brown Street property] was being reclaimed, for purposes of recreating a debt obligation . . . . " Amend. Compl., ¶ 17.

Bayview asserts that Alexander is unable to show any fraudulent conduct on its part. The Court agrees. Alexander was not a party to the assignment of the Mortgage and Note to Bayview, and he presents no evidence that the assignment was fraudulent or otherwise invalid. Alexander's claim that Bayview "reset" the loan amount is without support. The Assignment of Mortgage from MFT, L.L.C. to Bayview simply restates the original $346,232.19 loan amount, and Bayview's loan records clearly show that at the time of transfer, the principal balance under the Note was $313,777.66. *See* docket entry #90, Ex. #1, Loan Payment History at 51. Additionally, the record is void of evidence that Bayview "reclaimed" the South Brown Street property or that Bayview knew that the South Brown Street property had been released from the Mortgage when it charged the escrow account for insurance disbursements. Finally, the record is void of evidence that Alexander's default is fairly traceable to Bayview's accounting error. In sum, the Court finds that Bayview is entitled to summary judgment on Alexander's fraud claim.

**Additional Allegations**

In addition to his claims for breach of contract and fraud, Alexander claims that Bayview harassed him by attempting foreclosure and engaged in predatory lending practices, which caused him to suffer anxiety and depression. The record is void of evidence supporting these allegations, and Alexander fails to allege that Bayview's purported conduct violated a specific

statute or common-law principle. In sum, the Court finds that Bayview is entitled to summary judgment in its favor.

## IV.

On February 23, 2012, Bayview filed an answer to the amended complaint, along with a "Counterclaim and Third Party Claim for Foreclosure." Bayview brought the so-called "third-party claims"[2] against parties that may have an interest in one or more of the properties covered under the Mortgage. Because the counterclaim and third-party complaint went beyond a responsive pleading and changed the scope of this case, the Court struck those pleadings for failure to obtain leave under Fed. R. Civ. P. 15(a)(2). Five days before Bayview filed its motion seeking summary judgment on Alexander's claims, it filed a motion seeking leave to refile the aforementioned counterclaim and third-party complaint.

The Court has determined that no issues for trial exist with respect to Alexander's claims, and Bayview's permissive counterclaim seeking foreclosure[3] would unduly complicate and

---

[2]Federal Rule of Civil Procedure 14, which governs impleader, or third-party practice, provides that a defending party may bring a third-party complaint against "a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). Thus, Bayview may bring a third-party complaint against persons who are or may be liable to Bayview for all or part of Alexander's claims against Bayview. *See* 6 CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURES § 1442 (2d. ed. 1990)(noting that impleader under Rule 14(a) "is available only against persons who are or may be liable to defendant for part or all of plaintiff's claim; it cannot be used as a way of combining all controversies having a common relationship in one action"). Bayview does not allege that the proposed third-party defendants may be liable to it for part or all of Alexander's claim, thus impleader is not appropriate. Instead, Rules 19 and 20 of the Federal Rules of Civil Procedure govern joinder of the so-called "third-party defendants."

[3]A compulsory counterclaim is one that arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim. *See* Fed. R. Civ. P. 13(a). The Eighth Circuit articulated four tests for determining whether a counterclaim arises out of the same transaction or occurrence: (1) whether the issues of fact and law raised by the claim and counterclaim are largely the same; (2) whether res judicata will bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule; (3) whether substantially the same

prolong this litigation, which has been pending since October 22, 2010.

Furthermore, a permissive counterclaim requires an independent basis for subject matter jurisdiction, which is lacking here.  *See Shelter Mut. Ins. Co. v. Public Water Supply Dist. No. 7*, 747 F.2d 1195, 1197 (8th Cir. 1984)("Although a separate statement alleging jurisdiction is not necessary to support a compulsory counterclaim, a permissive counterclaim does require a basis of jurisdiction independent from that supporting the main claim.")   The only possible basis for subject matter jurisdiction is 28 U.S.C. § 1332, which requires complete diversity of citizenship between the parties.  Bayview fails to allege the citizenship of the proposed parties, and merely states that Alexander and "Third Party Defendants are residents of this state."  *See* docket entry #66, ¶ 30.  Additionally, the grant of diversity jurisdiction extends to civil actions between "citizens" of different states, *see* 28 U.S.C. § 1332(a), and Bayview names the State of Arkansas and the United States Department of Education as a third-party defendants.  The law is clear that neither a state nor an agency of the federal government is a citizen for purposes of § 1332. *See Moor v. Cnty. of Alameda*, 411 U.S. 693, 717, 93 S.Ct. 1785 (1973)("There is no question that a State is not a 'citizen' for purposes of the diversity jurisdiction."); *Weeks Const., Inc. v. Oglala Sioux Housing Authority*, 797 F.2d 668, 676 n.10 (8th Cir. 1986)(noting that an agency of the United States is not a citizen of a state for purposes of diversity of citizenship jurisdiction). Accordingly, the motion for leave will be denied.  *See Knapp v. Hanson*, 183 F.3d 786, 790 (8th Cir. 1999)(providing that permission to amend may be denied when the proposed amendment would be futile).

---

evidence supports or refutes the plaintiff's claim as well as defendant's counterclaim; and (4) whether there is any logical relation between the claim and the counterclaim.  *See Minnetonka, Inc. v. Sani-Fresh Int'l, Inc*., 103 F.R.D. 377, 379 (D. Minn. 1984).  In this case, the answer to questions (1) through (3) above is "no."

## V.

For the reasons stated, Defendant's motion for summary judgment (docket entry #88) is GRANTED, and Defendant's motion for leave to file a counterclaim and third party complaint (docket entry #87) is denied.  There being no issues remaining, pursuant to the judgment entered together with this order, this action is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED THIS 5th  DAY OF NOVEMBER, 2012.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE